UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| Ray Clarence Rogers,<br><br>　　　　　　　Plaintiff,<br>　v.<br>King County et al,<br><br>　　　　　　　Defendant. | CASE NO. 2:23-cv-1034<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 166) |

## I　INTRODUCTION

Before the Court is the Report and Recommendation ("R&R") of Magistrate Judge Grady J. Leupold (Dkt. No. 166), and objections thereto from Defendants (Dkt. No. 167) and Plaintiff (Dkt. No. 169).  For the reasons that follow, the Court ADOPTS the R&R in full and DENIES the objections.  Specifically, the Court adopts the recommendation to not dismiss Count I (ventilation) and to dismiss Counts II (foodservice and dirty trays) and III (law library), without leave to amend.

## II     BACKGROUND

Plaintiff is a pretrial detainee in the King County Regional Justice Center. (Dkt. No. 1-2 at 2.) His amended complaint alleges § 1983 claims on three principal bases: that his unit of the jail has a defective ventilation system resulting in unsanitary conditions in the bathroom and foul stench, that he is being served food that is cold and on dirty trays, and that the law library has failed to provide certain books and supplies, impairing his *pro se* criminal defense. (*See generally*, Dkt. No. 116.) Defendants moved to dismiss. (Dkt. No. 143.)

The R&R recommends that the motion to dismiss be granted in part and denied in part, specifically that the claim regarding the ventilation system should not be dismissed as to Defendants Verhelst and Skinner, but the other claims should be dismissed without leave to amend. (Dkt. No. 166 at 2.) Defendants assert that Judge Leupold erred in recommending denial of the motion as to the ventilation claim, while Plaintiff argues that the other claims should survive as well. (Dkt. Nos. 167, 169.)

Plaintiff has previously amended his complaint several times, and his Fourth Amended complaint is now the operative complaint. (*See* Dkt. Nos. 25, 85, 100, 115, 116).

## III     DISCUSSION

### a. Legal Standard

#### 1. Review of R&Rs

A district court reviews *de novo* "those portions of the report or specified proposed findings or recommendations to which [an] objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."). Objections to an R&R must be "specific." Fed. R. Civ. P. 72(b)(2).

2.  Motions to Dismiss

Federal Rule of Civil Procedure 12(b) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 547.

Additionally, complaints filed pro se are "to be liberally construed"; "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) ("*Iqbal* incorporated the *Twombly* pleading standard and *Twombly* did not alter courts' treatment of pro se filings; accordingly, we continue to construe pro se filings liberally when evaluating them under *Iqbal*."). "Unless it is absolutely clear that no amendment can cure the defect, [] a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). However, leave to amend is properly denied if amendment would be futile. *See Ventress v. Japan Airlines*,

603 F.3d 676, 680 (9th Cir. 2010); *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002).

### b. Analysis of the Ventilation Claim

Plaintiff's Count I relates to inadequate ventilation. (Dkt. No. 116 at 7–23.) Within prisons, inadequate "ventilation and air flow" violates the Eighth Amendment if it "undermines the health of inmates and the sanitation of the penitentiary." *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996), *opinion amended on denial of reh'g,* 135 F.3d 1318 (9th Cir. 1998) (quoting *Hoptowit v. Spellman,* 753 F.2d 779, 784 (9th Cir.1985)). For a pretrial detainee to allege deliberate indifference, they must show that:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.'" *Id.*

Plaintiff makes claims against supervisors within the jail. (*See* Dkt. No. 116 at 20–21.) As to supervisory liability, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black,* 885 F.2d 642, 646 (9th Cir. 1989)). The supervisor can create the causal connection by "setting in motion a series of acts by others or by knowingly refusing to terminate a series of acts by others,

which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* at 1207–1208. (cleaned up). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1208 (quoting *Watkins v. City of Oakland,* 145 F.3d 1087, 1093 (9th Cir. 1998)).

Plaintiff pled specific information regarding the non-functional vents. He states that there are four vents in his bunk area, two of which are inoperable and two of which function at an apparently reduced capacity. (Dkt. No. 116 at 13.) Plaintiff also identified five inoperable exhaust vents, three in the bunk area and two in the partially-enclosed bathroom and shower area. (*Id.* at 12.) Plaintiff alleges that the inadequate ventilation created mold and mildew in the shower area, the "smell of feces" lingered in the unit "throughout the day," and the unit became "unreasonably hot" such that he could "barely breathe." (*Id.* at 13, 17.) He alleges that as a result of these ventilation problems he suffered adverse health effects including "nausea[], dizziness, loss of appetite, headaches" and other mental and physical ailments. (*Id.* at 20.) He recounts an incident in which he was attacked by another inmate in the bathroom, and because the see-through structure separating the bathroom from the unit was fogged up with shower steam from lack of ventilation, officers could not timely notice and respond. (*Id.* at 17.)

The amended complaint identifies three individuals allegedly responsible for Plaintiff experiencing these conditions. Defendant Curtis was the "Corrections Program Administrator" responsible for overseeing the "Classification Department" that makes housing assignments. (*Id.* at 10.) Defendant Skinner was the "maintenance engineer whom was responsible for ensuring that ventilation/HVAC system throughout KCCF operated properly." (*Id.*) Defendant Verhelst

1  also had responsibility for inmate placement. (*Id.* at 11.) Plaintiff alleges that "at some point of
2  time Defendant Sgt. Verhelst addressed the entire unit regarding the inadequate ventilation" and
3  told the inmates that she had "notified the classification department of the units 7S-L-C
4  inadequate ventilation." (*Id.* at 14.) But the problem was not resolved, and Plaintiff and others
5  filed grievances that did not receive a response. (*Id.* at 14–15.) Ultimately, this condition
6  persisted for months, between June 2023 and January 2024, and the ventilation system was not
7  repaired. (*Id.* at 17, 19.)

8      The R&R finds that the inadequate ventilation claim is plausibly stated against
9  Defendants Verhelst and Skinner but not Defendant Curtis. Citing *Keenan* and other cases, the
10 R&R finds that the poor ventilation conditions as alleged in the complaint could rise to the level
11 of a constitutional violation and are stated with sufficient detail. (Dkt. No. 166 at 9–10.) As to
12 Defendant Curtis, Plaintiff failed to allege that he personally had any responsibility for or notice
13 of the ventilation conditions, beyond conclusory statements, so the claim against him must be
14 dismissed. (*Id.* at 10.) But Plaintiff adequately pled that Verhelst was on notice, since she
15 addressed the unit regarding the issue. (*Id.* at 9–10.) And as to Defendant Skinner, Judge
16 Leupold drew an inference in Plaintiff's favor that "Defendant Skinner would have likely learned
17 about the ventilation failure after Verhelst spoke of it or would have been aware of the issue
18 pursuant to regular management of the unit's facilities" in his capacity as the maintenance
19 engineer. (*Id.* at 11.) Because it is clearly established that poor ventilation can create a
20 constitutional violation, Verhelst and Skinner were not entitled to qualified immunity, either.
21 (*Id.* at 11–12.)

22     Defendants' primary objection to this analysis is that in its discussion of poor ventilation
23 conditions causing a constitutional violation, the R&R relies on cases concerning high heat,
24

ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 166) - 6

particularly in California prisons, and the same concerns are not present in the cool, rainy climate of the Seattle region. (Dkt. No. 167 at 4–5.) Defendants in fact ask this Court to take judicial notice of temperatures in Seattle in June through August of 2023, attaching a climate chart to their motion. (*Id.*; Dkt. No. 168 at 4.) While the Court acknowledges that Seattle is not as prone to extreme heat as parts of California, Defendants overstate the issue. First, Judge Leupold did not rely exclusively on high-heat cases. For instance, the R&R cites *Keenan*, where Plaintiff alleged "the smell of urine and vomit as well as other stale bodily odors" from poor ventilation, and the Ninth Circuit held that summary judgment was improper because "[i]f the air was in fact saturated with the fumes of feces, urine, and vomit, it could undermine health and sanitation." *Keenan*, 83 F.3d at 1090. (*See* Dkt. No. 166 at 9.) Likewise, the R&R cites a case from this district which allowed a claim to proceed in part on the basis of a "'horrible smell and stench' in the showers," that made it "'hard to breathe' at times." *Brennan v. Aston*, No. C17-1928-JCC-JPD, 2018 WL 3406948, at *8 (W.D. Wash. June 14, 2018), *report and recommendation adopted,* No. C17-1928-JCC, 2018 WL 3388926 (W.D. Wash. July 12, 2018). (Dkt. No. 166 at 9–10.) Other cases support the conclusion that an inadequate ventilation claim need not be based on high heat. *See Chandler v. Crosby*, 379 F.3d 1278, 1294 (11th Cir. 2004) ("Cooling and ventilation are distinct prison conditions, and a prisoner may state an Eighth Amendment claim by alleging a deficiency as to either condition in isolation or both in combination.") Second, even accepting that the climate in Seattle is cool, common sense would dictate that an enclosed space crowded with people could become "unreasonably hot" without adequate ventilation, even if it is cool outside.

Defendants make other objections to the ventilation claim. They argue that neither Verhelst nor Skinner made an intentional choice with respect to the ventilation, and that Verhelst

ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 166) - 7

informing the classification department of the condition was a reasonable measure to abate the known risk. (Dkt. No. 167 at 3, 5.) At the motion to dismiss stage, and construing the pro se complaint liberally, the Court finds that Plaintiff has at least plausibly pled the elements of the claim. Verhelst was in charge of the unit and knew of the condition; Skinner was responsible for maintenance. In fact, Skinner was only named as a defendant after Judge Leupold ordered Defendants to identify "the maintenance engineer responsible for operating and maintaining the unit's exhaust vents," and Defendants represented that Skinner is "the Maintenance Engineer at the Facilities Maintenance Division that conducts maintenance at the KCCF." (Dkt. Nos. 76 at 3; 77 at 1) (internal citation omitted). At this early stage, the Court can draw an inference in Plaintiff's favor that failing to remedy the condition with knowledge of its existence for at least eight months involved some intentional act or omission, and that even if informing the relevant department was a reasonable measure to abate the problem at the outset, failing to follow up after the condition persisted for so long became objectively unreasonable at some point.

Likewise, Defendants argue that Verhelst and Skinner are entitled to qualified immunity because the high-heat cases do not apply, and because nothing clearly establishes that their respective omissions constitute indifference. (Dkt. No. 167 at 6.) But again, this case is only at the motion to dismiss stage, where it is often premature to consider a qualified immunity defense due to the lack of discovery. *See Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018) ("Determining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making"); *see also Wong v. United States*, 373 F.3d 952, 957 (9th Cir. 2004) (by deciding qualified immunity at motion to dismiss stage, "courts may be called upon to decide far-reaching constitutional questions on a nonexistent factual record, even where . . . discovery would readily reveal the plaintiff's claims to be factually baseless.")

Further, *Keenan* clearly establishes that the right to adequate ventilation is not limited to high-heat, and Plaintiff need not produce a case with the exact same fact pattern to overcome qualified immunity. *See Gordon v. Cnty. of Orange*, 6 F.4th 961, 969 (9th Cir. 2021) ("casting an allegedly violated right too particularly, 'would be to allow [the instant defendants], and future defendants, to define away all potential claims.'").

At this early stage in the litigation, it is unclear if Plaintiff will ultimately be able to prove up his claim such that it can survive summary judgment or ultimately succeed on the merits. But the Court agrees with Judge Leupold that Plaintiff has at least plausibly stated the claim as to Verhelst and Skinner, and no more is required at the motion to dismiss stage.

Additionally, Plaintiff objects to Judge Leupold's decision to dismiss Defendant Curtis from the litigation. (Dkt. No. 169 at 4–6.) The Court agrees with Judge Leupold that the claim against Curtis is too attenuated to survive the motion to dismiss. (*See* Dkt. No. 166 at 10) ("Plaintiff alleges that Curtis transferred him to a unit with poor ventilation but does not describe how Curtis would be aware of, or responsible for, the unit's ventilation."). Unlike Verhelst, where Plaintiff has pled facts showing she had actual knowledge of the allegedly unconstitutional condition, and Skinner, whose core job responsibilities would have included remedying that condition, Plaintiff can only speculate that "at some point of time Defendant Curtis was informed" of the grievances regarding ventilation by virtue of his supervisory position. (Dkt. No. 169 at 5.) This is insufficient to plausibly allege that Curtis either caused the constitutional violation himself or caused people working below him to do so. *See Starr*, 652 F.3d at 1207–1208.

    **c. Foodservice Claim**

Plaintiff's Count II makes several allegations with respect to foodservice at the jail. He alleges that food was kept and served at a temperature below 140º Fahrenheit and that this temperature was unsafe, and that this allowed bacteria growth, and that this makes him sick "everytime that he has consumed food served with bacteria growth, which has usually been the main course," so he skips meals. (*See* Dkt. No. 116 at 27, 30–31, 33, 35–37.) Plaintiff alleges that he has been prescribed a low-sodium and "soft" diet by a physician at KCCF due to hypertension and digestive issues, but he has been served a "monotonous" diet, including eggs which are high in cholesterol. (*Id.* at 28–30.) When he complained about this, he was offered a vegan diet, but he rejected that because he is not vegan, so his "diet was switched back to the monotonous egg diet." (*Id.* at 30.) Finally, Plaintiff alleges that he was served food on trays that were "stained with black layered uncleaned filth, filth could possibly be feces." (*Id.* at 31.)

Judge Leupold dismissed these claims. While acknowledging that tainted food can be the source of a valid constitutional claim, the R&R notes that there is no constitutional right to food that is "tasty or aesthetically pleasing." (Dkt. No. 166 at 12) (quoting *Smith v. Penzone*, No. CV1703892PHXDGCDMF, 2018 WL 3819126, at *5 (D. Ariz. Aug. 10, 2018)). Likewise, there is "no constitutional right to be served a hot meal." (*Id.* at 13) (quoting *Garnica v. Washington Dep't of Corr.*, 965 F. Supp. 2d 1250, 1267 (W.D. Wash. 2013), *aff'd*, 639 F. App'x 484 (9th Cir. 2016)). The R&R explains why Plaintiff's claim is not plausibly stated:

> Even assuming the food was served cold, this fact does not demonstrate the food was per se dangerous to Plaintiff. Plaintiff does not identify how long perishable food at the Jail is exposed to cooler temperatures before being served, information critical to determining the amount of bacteria growth. Plaintiff also fails to identify how often he became sick from eating the Jail's food, and how he knew that any illness was due to eating contaminated food. Nor does Plaintiff identify any odd tastes, textures, or smells in the meals to indicate they may have spoiled. Instead, Plaintiff simply claims that the Jail served cold food and he became ill from it, facts insufficient to establish a constitutional violation.

(*Id.*)

As to Plaintiff's claim regarding a "monotonous egg diet" high in cholesterol, the R&R stated: "Even assuming Plaintiff's original diet was hazardous and posed a substantial risk to his health, Plaintiff offers no reason as to why he could not eat the vegan alternative offered. The fact that Plaintiff was provided a viable alternate diet, and declined this diet without reason, dooms his claim." (*Id.* at 14.)  Finally, as to the dirty-tray claim, the R&R found that the claim was conclusory and lacked necessary detail: "Plaintiff does not describe what proportion of food trays were stained, the severity and size of the stains, or any differences in stains between trays. Nor does Plaintiff describe any odd textures or smells indicating stains were not merely cosmetic wear on the trays." (*Id.*)  Therefore, Plaintiff's claim failed, because "[f]ood served with old or stained equipment is not, by itself, a substantial risk to a detainee's health." (*Id.*) (citing *Becerra v. Kramer*, No. 16 C 1408, 2017 WL 85447, at *7 (N.D. Ill. Jan. 10, 2017) ("Regarding the 'white particles' on the trays, Plaintiff again has failed to identify any evidence that the 'particles' made him ill or that they were anything other than discolorations from repeated use and cleaning")).

Plaintiff objects to the R&R's conclusion as to his foodservice claims, but his objections largely track the same allegations in the complaint that the R&R finds insufficient. (*See* Dkt. No. 169 at 6–9.)  Among other things, Plaintiff argues that Defendants had no authority to switch him from a medical diet to a vegan diet, and that failing to provide the prescribed medical diet is a constitutional violation. (*Id.* at 9) (citing *Feliciano v. Sierra*, 300 F. Supp. 2d 321, 341 (D.P.R. 2004)).

The Court agrees with Judge Leupold's analysis regarding the foodservice claims. As to the food temperature allegation, the claim that Plaintiff's food was regularly contaminated with

bacteria and that such contamination caused him illness is speculative and not supported by facts in the complaint. Without knowing how long food was kept out before serving, what temperature it was kept at, and what the safe temperature was for that particular food item, it is impossible to know if there is any basis to the allegation (*see* Dkt. No. 166 at 13 n.5) (citing Washington State Department of Health guidance on how long perishable foods may be left out of the refrigerator)—but Plaintiff's speculation is not enough even at this early stage to take discovery on these issues. That the food was cold when served is not itself a constitutional claim. "The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) (quoting *Hamm v. DeKalb County,* 774 F.2d 1567, 1575 (11th Cir.1985)).

As to the medical diet claim, the Court likewise finds no error in the R&R's analysis. Plaintiff is correct that failing to provide a medically prescribed diet can form the basis of a constitutional claim. *See Picciano v. Clark Cnty.*, No. 3:20-CV-06106-DGE, 2024 WL 3859755, at *2, *6 (W.D. Wash. Aug. 19, 2024), *reconsideration denied*, No. 3:20-CV-06106-DGE, 2024 WL 4451611 (W.D. Wash. Oct. 8, 2024) (denying summary judgment on claim that jail failed to provide gluten-free diet to inmate with celiac disease). However, Plaintiff has not put forward evidence to support an inference that either the "monotonous egg diet" or vegan meals he was offered were inconsistent with the low sodium, easily digestible diet he states a physician ordered for him.

Finally, as to the dirty-tray allegation, the Court again finds no error in the R&R. It is true that serving food on uncleaned, unsanitary trays could amount to a constitutional violation if those conditions posed a risk to inmate health. *See Garcia v. Foulk*, No. 214CV2378JAMDBP,

2020 WL 564791, at *9–11 (E.D. Cal. Feb. 5, 2020), *report and recommendation adopted sub nom. Garcia v. Folks*, No. 214CV2378JAMDBP, 2020 WL 1432994 (E.D. Cal. Mar. 24, 2020) (finding material issue of fact as to unsanitary food claim).  However, the Court agrees with Judge Leupold's analysis that Plaintiff's allegation does not support an inference that he was served food on unsanitary trays.  Rather, as the R&R notes, Plaintiff's allegation lacks detail other than that some trays had black stains, with no further description or information about the frequency of the problem, and is consistent with being served food on trays that have signs of wear from repeated use.  *Cf. Gonzalez v. Ahern*, No. 19-CV-07423-JSC, 2021 WL 783541, at *7–8 (N.D. Cal. Mar. 1, 2021), *aff'd*, No. 21-15485, 2022 WL 964212 (9th Cir. Mar. 30, 2022) (denying preliminary injunction to remedy food trays that allegedly were dirty with residual food from prior meal service, because claim was not supported by evidence).  Plaintiff's speculative assertion that black stains on the trays are from feces is not supported by any evidence.

The Court agrees with Judge Leupold that given the speculative nature of these claims and the number of opportunities Plaintiff has already had to amend his complaint, further leave to amend as to Count II would be futile.  (*See* Dkt. No. 166 at 17.)

   **d.  Law Library Claim**

Plaintiff's Count III makes several allegations with respect to the jail's law library.  He alleges that the library has not provided access to Washington Practice Series: Criminal Law and Washington Practice and Procedure books, the Washington Lawyer's Practice Manual, and the King County Supreme Court Criminal Defense Manual, which would aid in his criminal pro se defense. (Dkt. No. 116 at 45–46.)  But Plaintiff alleges he was told that by Defendant Moses that he could only have access to two books, which were the Washington Practice Series: Washington Pattern Jury Instructions, 11 and 11A.  (*Id.* at 47.)  Plaintiff spoke again with Moses

and was informed that his request was denied, and was told that the Washington Practice Series is a secondary source and the county is not "aware of any legal requirement for such secondary sources to be provided to pro se inmates." (*Id.* at 48.) Plaintiff was also told he could not make photocopies, meaning he had to hand-copy items of interest from the library. (*Id.* at 49.) He also could get a maximum of five half sized pencils, no pens, which was inconvenient to him due to the need for frequent sharpening. (*Id.*)

The R&R recommended dismissal of these claims on the grounds that Plaintiff could not demonstrate injury. The R&R recognized that prisoners have a right of access to the courts under the First and Fourteenth Amendments, but to allege a violation of these rights, a plaintiff must show "actual injury" by showing that "a nonfrivolous legal claim had been frustrated or was being impeded." (Dkt. No. 166 at 15) (quoting *Pearson v. Cooke*, No. 3:22-CV-00009-ART-CSD, 2022 WL 22838324, at *4 (D. Nev. May 10, 2022)). Here, "Plaintiff fails to show how deprivation of these resources 'directly impacted the relevant litigation in a manner adverse to him.'" (*Id.* at 16) (quoting *Robben v. El Dorado Cnty.*, No. 216CV2695MCEKJNP, 2017 WL 999464, at *2 (E.D. Cal. Mar. 14, 2017)). Plaintiff objects, stating that he did suffer injury, in the form of having to give up his self-representation in his criminal case. (Dkt. No. 169 at 10.)

The Court adopts the R&R's holding that Plaintiff's Count III regarding law library access should be dismissed. There is a First Amendment right to access to the courts, which for incarcerated people encompasses access to a prison law library. *Bounds v. Smith,* 430 U.S. 817, 828 (1977); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). As the R&R explained, in order to plead a claim arising from an inadequate law library, "an inmate must show that the alleged inadequacies of a prison's library facilities or legal assistance program caused him 'actual injury'—that is, 'actual prejudice with respect to contemplated or existing litigation, such as the

inability to meet a filing deadline or to present a claim.'" *Lewis v. Casey*, 518 U.S. 343, 348 (1996).  Plaintiff has not met that bar here.  He is correct that under the Sixth Amendment there is a right to self-representation in a criminal case, *see Faretta v. California*, 422 U.S. 806 (1975), but his legal claim is that Defendants violated his First Amendment right to access the courts, not that he was prohibited from self-representation in violation of the Sixth Amendment.  Even accepting as true that Plaintiff switched from proceeding *pro se* to accepting representation in his criminal case on account of the inadequate law library, Plaintiff does not explain how that change made him any worse off in terms of access to the courts.

Further, even assuming *arguendo* that Plaintiff could show injury, the substantive right to law library materials is not limitless.  Plaintiff states that he wants access to the Washington Practice Series: Criminal Law and Washington Practice and Procedure books, the Washington Lawyer's Practice Manual, and the King County Supreme Court Criminal Defense Manual, but that he does have access to Washington Practice Series: Washington Pattern Jury Instructions.  (Dkt. No. 116 at 45–48.)  Plaintiff states that he wanted these books because "he did not have standby counsel to assist forms and filing, and that the books contained forms."  (*Id.* at 47.)  While Plaintiff's request for these materials may not be an unreasonable one, it does not mean that access to any particular book is constitutionally required.  *See Lindquist v. Idaho State Bd. of Corr.*, 776 F.2d 851, 856 (9th Cir. 1985) (holding that law library's failure to provide access to Shepard's Citations was "questionable" but not unconstitutional in light of access to other materials); *Housley v. Killinger*, 972 F.2d 1339 (Table), 1992 WL 170989 at *1 (9th Cir. 1992) (finding no requirement for federal prison to provide access to "state law reporters or digests"); *Johnson v. Moore*, 948 F.2d 517, 521 n.2 (9th Cir. 1991) (finding that an inventory of law library books that included Federal Practice and Procedures volumes on criminal law, Shepards

1  Citations, and "numerous nutshells, treatises, and other materials on federal law and Washington

2  law" "meets or exceeds what is constitutionally required."). Because Plaintiff states that he

3  already has access to certain Washington Practice Series volumes and the complaint gives

4  insufficient legal or factual reason why lack of access to other Washington Practice Series

5  volumes is a constitutional deprivation, the count was properly dismissed, and the Court finds

6  that further amendment would be futile.

7  Plaintiff further alleges that he does not have access to photocopying services in the law

8  library, and that this violates his right of access to the courts. Plaintiff claims there was a "no

9  photocopy policy." (Dkt. No. 116 at 49.) The Ninth Circuit has stated that "[a] denial of free

10  photocopying does not amount to a denial of access to the courts." *Johnson*, 948 F.2d at 521; *see

11  also Sands v. Lewis*, 886 F.2d 1166, 1169 (9th Cir. 1989) ("numerous courts have rejected any

12  constitutional right to free and unlimited photocopying.") In *Johnson*, plaintiff did have access

13  free paper and carbon paper, and paid photocopying—at a rate of $0.20 per page. *Johnson*, 948

14  F.2d at 521. It is unclear on this record if Plaintiff has access to any paid photocopying or copy

15  alternative. Even if not, Plaintiff still must show injury related to his lack of photocopying

16  access. *Keenan*, 83 F.3d at 1094 ("Keenan claimed that photocopy and notary services were too

17  slow and expensive" but "Keenan has alleged no actual injury related to copying and notary

18  services"); *Rodriguez v. Pearce*, 5 F.3d 539 (Table), 1993 WL 347066 at *3 (9th Cir. 1993)

19  ("Rodriguez did not present any evidence that the lack of photocopies resulted in an actual denial

20  of access to this court."); *Jackson v. Hodge*, No. EDCV1501169PSGRAO, 2017 WL 11632911,

21  at *9 (C.D. Cal. Mar. 28, 2017) ("the critical inquiry in this case is whether Plaintiff was actually

22  injured, not whether he was able to photocopy documents the way that he would have liked or

23  whether he was able to make all of the photocopies that he wished.").

24

Here, Plaintiff states that his access to courts is hindered by the lack of photocopying because he cannot "photocopy documentary evidence that could not be duplicated by hand." (Dkt. No. 116 at 49.)  But that reasoning is circular; Plaintiff states he was injured by lack of photocopying because he could not photocopy all the things he wished to photocopy.  He does not state that he faces "actual prejudice with respect to contemplated or existing litigation" from the lack of copying.  *Lewis*, 518 U.S. at 348.  Therefore, dismissal of his photocopying claim was appropriate, and in light of the lack of any evidence of cognizable injury, further leave to amend is unwarranted.

Finally, Plaintiff alleges that his right to access the courts was violated because he was only provided small pencils, which required frequent sharpening, and no pens.  (*See* Dkt. No. 116 at 49.)  While this may be inconvenient for Plaintiff, he has not cited any case requiring access to pens rather than pencils.  This aspect of Plaintiff's Count III was also properly dismissed without leave to amend.

## IV   CONCLUSION

For the foregoing reasons, after *de novo* review, the Report and Recommendation (Dkt. No. 166) is ADOPTED in full and the objections (Dkt. Nos. 167, 169) are DENIED.  The Clerk is directed to forward a copy of this order to Plaintiff and to the Hon. Grady J. Leupold.

Dated this 7th day of May, 2025.

David G. Estudillo
United States District Judge